UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MONA LISA AT CELEBRATION, LLC, | ) | Case No.  6:09-bk-00458-KSJ |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| LAURA BRUNO, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proc. No. 6:09-ap-49 |
| vs. | ) | |
| | ) | |
| MONA LISA AT CELEBRATION, LLC, | ) | |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY, SUNTRUST BANK, and | ) | |
| BANKFIRST, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| KAREN DODSWORTH, ET AL., | ) | |
| | ) | Adversary Proc. No. 6:09-ap-769 |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| MONA LISA AT CELEBRATION, LLC, | ) | |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY, SUNTRUST BANK, and | ) | |
| BANKFIRST, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION PARTIALLY GRANTING AND PARTIALLY
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The numerous plaintiffs in these two adversary proceedings[1] each signed a purchase

agreement to buy units in a hotel-condominium project developed by the debtor, Mona Lisa at

---

[1] On January 27, 2010, plaintiffs in the Dodsworth Adversary (6:09-ap-769) filed a motion for joinder in motion for
summary judgment filed by plaintiffs in the Bruno Adversary (6:09-ap-49) (Doc. No. 80 in the Dodsworth
Adversary).  Unless noted otherwise, all references to docket numbers are to those in the Bruno Adversary.

Celebration, LLC.[2]  The buyers no longer want to go forward with the purchase and request the return of their sizeable deposits alleging violations of various state and federal laws.  Plaintiffs and defendants have each moved for summary judgment on nine of the ten counts raised in the amended complaint.[3]  Defendants are entitled to summary judgment on all counts, *except* Counts IV, a portion of VIII, and X where factual disputes preclude summary judgment for either party.[4]

Mona Lisa marketed, developed, built, and sold units for a luxury hotel-condominium development in Celebration, Florida.  From June 2005, through September 2007, plaintiffs entered into agreements with Mona Lisa to purchase specific units.  Each buyer made a large deposit of between 15-20 percent of the purchase price into an escrow account maintained by SunTrust, the escrow agent.  In total, plaintiffs deposited approximately $2 million[5] with SunTrust.  On December 1, 2006, Mona Lisa obtained a surety bond from Westchester Fire Insurance Company to allow it to withdraw plaintiffs' deposits from the escrow account, as permitted under Fla. Stat. § 718.202.[6]

The now completed development consists of 240 one- and two-bedroom suites within two separate buildings arranged in a semi-circular arc.  Between the two hotel-condo buildings lies a circular pool and hot-tub surrounded by approximately 23,500 square feet of decking and landscaping features.  Nearby, and also within the arc created by the hotel-condo buildings, is a two-story multi-use building with amenities all visitors can use including a reception area, bar,

---

[2] Defendants, in addition to Mona Lisa, include its surety bond issuer, Westchester Fire Insurance Company, and the escrow agent for plaintiffs' deposits, SunTrust Bank.  Plaintiffs have dismissed BankFirst as a defendant pursuant to the two Joint Stipulations of Dismissal of Defendant BankFirst Only (Doc. No. 147 in the Bruno Adversary; and Doc. No. 83 in the Dodsworth Adversary).

[3] On June 30, 2009, plaintiffs filed their original Motion for Summary Judgment on Counts V, VI, VII, VIII, and X. On December 21, 2009, defendants filed their Cross-Motion for Summary Judgment and a Motion for Summary Judgment on the remaining counts, and the parties thereafter exchanged numerous responses and replies (Doc. Nos. 45, 120, 123, 124, 126, 135, 136, 137, 142, and 144 in the Bruno Adversary; Doc. No. 46 in the Dodsworth Adversary).  The parties also filed numerous supporting affidavits (Doc. Nos. 46, 47, 55-75, 121, and 125 in the Bruno Adversary; Doc. Nos. 48, 49, 58-62 in the Dodsworth Adversary).

[4] The Court also will dismiss Count IX because plaintiffs already have voluntarily dismissed BankFirst, the only defendant named in Count IX.

[5] As set forth in their Amended Complaints (Doc. No. 10 in the Bruno Adversary; Doc. No. 9 in the Dodsworth Adversary), the Bruno plaintiffs paid deposits totaling $1,433,825, and the Dodsworth plaintiffs paid deposits of $572,550.

[6] The surety bond originally was in the amount of $5,000,000, effective December 1, 2006.  On December 1, 2007, Westchester issued a rider increasing the surety bond amount to $6,750,000.

restaurant, and meeting facilities.  Mona Lisa finished construction in early 2008, and obtained a certificate of occupancy on May 7, 2008.  By the end of 2008, over 70 unit owners had closed on the sale of their units.

Mona Lisa's business (like that of many other businesses in the Orlando tourist corridor) was crippled by the financial recession of 2008.  Buyers refused to close sales.  To add to Mona Lisa's troubles, construction delays pushed back completion over a year from its original estimated closing date of April 30, 2007.  Then, from May 2008, through January 2009, various buyers brought individual actions against Mona Lisa in the United States District Court for the Middle District of Florida, seeking rescission of their purchase agreements.  On November 7, 2008, these and other civil cases filed against Mona Lisa were consolidated under Case Number 6:08-cv-735-Orl-KRS.  On January 15, 2009, Mona Lisa filed this Chapter 11 case, and the District Court actions automatically were stayed.[7]

The 48 named plaintiffs[8] then filed these two adversary proceedings alleging the following 10 causes of action against Mona Lisa:

- **Count I**:         Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1703);

- **Count II**:        1933 Securities Act (15 U.S.C. § 77e);

- **Count III**:       Florida Securities and Investor Protection Act (Fla. Stat. Chap. 517);

- **Count IV**:        Florida Condominium Act (Fla. Stat. § 718.202);

- **Count V**:         Florida Condominium Act (Fla. Stat. § 718.503);

- **Count VI**:        Florida Condominium Act (Fla. Stat. § 718.506);

- **Count VII**:       Florida Unfair Trade Practices Act (Fla. Stat. § 501.201 et seq.);

---

[7] The District Court actions were stayed (Doc. No. 56) pending resolution of plaintiffs' motions for relief from stay to proceed with the lawsuits (Doc. Nos. 33, 42, and 43 in the bankruptcy case), and administratively closed shortly thereafter on February 2, 2009.  This Court denied those motions on May 15, 2009 (Doc. No. 138).

[8] Appendix A lists the name of each plaintiff in the Bruno Adversary and in the Dodsworth Adversary together with the date each plaintiff first asserted a claim against Mona Lisa, the date plaintiff filed a proof of claim, the claim number, and whether the debtor objected to the claim.  All claims filed by plaintiffs are timely, either filed by the bar date of May 26, 2009, or after receiving an approved extension of time.

- **Count VIII**:    Breach of Contract;

- **Count IX**:    Equitable Lien (asserted only against BankFirst, who plaintiffs recently, voluntarily dismissed); and

- **Count X**:    Declaratory Judgment.

Plaintiffs name Mona Lisa as a defendant in all counts of the amended complaints.[9]   Counts I through VIII name only Mona Lisa as a defendant.  Count X (Declaratory Relief) names Mona Lisa, SunTrust, and Westchester as defendants.

Plaintiffs and defendants have moved for summary judgment on Counts I-VIII and Count X.   Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  The moving party has the burden of establishing the right to summary judgment.[10]   However, under Rule 56(e), the nonmoving party, in responding to a properly made motion for summary judgment, "may not rely merely on allegations or denials in its own pleadings; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."   Conclusory allegations by either party, without specific supporting facts, have no probative value.[11]

In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[12]   "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

---

[9] Doc. Nos. 1 and 10 in the Bruno Adversary; Doc. Nos. 1 and 9 in the Dodsworth Adversary.
[10] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[11] *Evers v. General Motors Corp.* 770 F.2d 984, 986 (11th Cir. 1985).
[12] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

there is no genuine issue for trial."[13]    A material factual dispute thus precludes summary judgment.[14]

## PLAINTIFFS ARE NOT ENTITLED TO RELIEF UNDER THE INTERSTATE LAND SALES FULL DISCLOSURE ACT (COUNT I).

The Interstate Land Sales Full Disclosure Act ("ILSFDA")[15] is a federal anti-fraud statute regulating the sale of certain real estate developments containing more than 100 "lots" of land.[16]  In Count I, plaintiffs seek both rescission of their purchase agreements[17] and damages under the statute, arguing Mona Lisa violated § 1703 of ILSFDA when it failed to provide them a written property report prior to signing sales contracts, as required by the statute.[18]  Defendants admit they did not provide a property report but assert that (1) ILSFDA does not apply in this case because the hotel-condo units are not "lots" as defined by the statute; (2) the rescission claims are time-barred (with two exceptions); (3) plaintiffs cannot show their deposits constitute damages; and (4) the Updated Purchase Agreements are exempt from ILSFDA.  Assuming for the purpose of this opinion that the hotel-condo units qualify as "lots" under ILSFDA,[19] the Court still finds that plaintiffs' ILSFDA claims all fail because either they are time-barred, unsupported by any factual allegations, or the Updated Purchase Agreements are exempt from ILSFDA.

---

[13] *Matsushita Elec. Industrial Co. v. Zenith Radio* Corp, 475 U.S. 572, 587 (1986).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[15] 15 U.S.C. § 1701, *et seq.*

[16] ILSFDA generally applies to the sale of "lots" that are part of a sales program of 100 or more lots offered pursuant to a common promotional plan. 61 Fed. Reg. 13,601, 13,602 (1996).

[17] Plaintiffs signed purchase agreements between May 2005 and September 2007. The Court will reference purchase agreements signed *prior* to March 4, 2006, as the "Original Purchase Agreements."  Because, *after* March 4, 2006, Mona Lisa used a different form of purchase agreement requiring it to complete construction within two years of the date the buyer signed the contract, the Court will reference the later purchase agreements as the "Updated Purchase Agreements."

[18] Section 1703(a)(1)(B) prohibits a developer from selling a lot without providing a written property report.  Section 1707 describes the required report.

[19] Only the Sixth Circuit Court of Appeals has discussed whether a condo-hotel is subject to ILSFDA. *Becherer v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 127 F.3d 478 (6th Cir. 1997).  Although the analysis in *Becherer* is informative, significant factual distinctions exist between the two projects involved.  The analysis of whether ILSFDA would or would not apply to the hotel-condo units sold by Mona Lisa is very fact-specific and not susceptible to resolution by summary judgment.  However, even assuming the statute applies, no single plaintiff is entitled to relief under ILSFDA.

## **Plaintiffs' rescission claims are time-barred, with two exceptions.**

As a threshold matter, plaintiffs must have timely filed their claims under ILSFDA's statute of limitations. This Court previously addressed a portion of the statute of limitation question in its prior Order Denying the Defendants' Motion to Dismiss,[20] holding that ILSFDA's statute of limitations requires buyers to assert claims within three years of signing a purchase agreement. Accordingly, the law of this case is that any party who filed an ILSFDA claim more than three years after signing a purchase agreement is time-barred from asserting either a rescission or damages claim.[21]

The current issue is whether ILSFDA allows buyers to assert rescission claims more than two years after signing a purchase agreement, as apparently proscribed by § 1711(b).[22] The statute links together three different provisions to determine the statute of limitations for a rescission claim: § 1703(c), which creates the right of rescission and notice requirements; § 1709(b), which provides that a buyer can seek equitable or legal remedies for a violation of §1703(c); and § 1711(b), which provides the statute of limitations for a cause of action brought under § 1709(b) for a violation of § 1703(c).

The interplay between § 1703(c) and § 1711(b) is the source of disagreement in this case. Section 1703(c) of ILSFDA permits a buyer *to rescind* a contract "within two years from the date of such signing [of the sales contract.]"[23] But § 1711(b) provides that "[n]o action shall be maintained ... to enforce a right created under … [§ 1703] (c) … unless brought within three years after the signing of the contract." The parties thus dispute whether § 1711(b) allows plaintiffs to bring *rescission* claims within three years of signing. The Court finds that tenets of statutory construction

---

[20] *In re Mona Lisa at Celebration, LLC*, 410 B.R. 710, 717-18 (Bankr. M.D. Fla. 2009).
[21] *Id.* Appendix D lists the parties who filed their claims more than three years after signing a sales contract and are time-barred from bringing a claim under ILSFDA.
[22] None of the parties disputes that under § 1711(a)(1) and the law of this case that a plaintiff may bring damages claims up to three years after signing a sales contract.
[23] 15 U.S.C. § 1703(c).

and the overwhelming body of case law make clear that a buyer must file *rescission* claims under ILSFDA within two years of signing a contract but has three years to assert *damages* claims.

Plaintiffs' argument that § 1711(b) allows them three years to bring a rescission claim is unconvincing. This interpretation would render the two-year provision of § 1703(c) meaningless, contrary to the "cardinal principle of statutory construction" that no part of a statute should be considered superfluous or insignificant.[24] Following plaintiffs' rationale "would effectively excise from ILSFDA the language in § 1703(c) setting a two-year period" to rescind.[25] By contrast, reading the statute to create a two-year statute of limitation for rescission claims would still recognize § 1711(b)'s requirement that a right created under § 1703(c) be brought within three years. Finding that the two-year limitation governs thus gives meaning to both the two-year provision of § 1703(c) and the three-year provision of § 1711(b).

Although the Eleventh Circuit Court of Appeals has not ruled on this issue, the majority of courts examining this issue hold that rescission claims have a two-year statute of limitations.[26] These courts read the two ILSFDA provisions together to allow a plaintiff three years to bring a rescission claim *only* if plaintiff tries to rescind within two years and the developer wrongfully refuses.[27] Courts also hold that the two-year statute of limitations applies regardless of whether the

---

[24] *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

[25] *Taylor v. Holiday Isle, LLC*, 561 F. Supp. 2d 1269, 1273 (S.D. Ala. 2008).

[26] *See Taylor v. Holiday Isle, LLC*, 561 F. Supp. 2d 1269 (S.D. Ala. 2008), *Ditthardt v. North Ocean Condos, L.P.*, 580 F. Supp. 2d 1288, 1290-1292 (S.D. Fla. 2008) (referencing *Taylor*); *Bush v. Bahia Sun Associates LP*, 2009 WL 963133, No. 8:07-cv-1314-T-17-EAJ, at *11 (M.D. Fla. April 8, 2009) (following *Taylor* and *Ditthardt*); *Meitis v. Park Square Enterprises, Inc.*, 2008 WL 5351619, No. 6:08-cv-1080-Orl-22GJK, (M.D. Fla. Dec. 17, 2008) (citing *Taylor*); *Gilmore v. Residences at Sandpearl Resort LLC*, 2008 WL4426705, No 8:08-CV-1400-T-23TGW (M.D. Fla. Sept. 26, 2008) (*citing Taylor*); *Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770, No. 6:09-cv-1268-Orl-19GJK, at *3-4 (M.D. Fla. Dec. 22, 2009) (*citing Taylor*); *Werdmuller Von Elgg v. Carlyle Developers, Inc.*, 2009 WL 961144, No. 6:09-cv-132-Orl-31KRS (M.D. Fla. April 7, 2009) (*citing Taylor* and *Ditthardt*); *In re Paramount Lake Eola, L.P. Litigation*, 2009 WL 2525558 (M.D. Fla. Aug. 17, 2009), at *14, n. 29; *Tait v. 430 Hibiscus, L.P.*, 2009 WL 455439, No. 08-80806-CIV, at *2 (S.D. Fla. Feb. 23, 2009); *see also Orsi v. Kirkwood*, 999 F.2d 86, 89 (4th Cir. 1993).

[27] *Gilmore v. Residences at Sandpearl Resort LLC*, 2008 WL4426705, at 1; *Taylor v. Holiday Isle, LLC*, 561 F. Supp. 2d 1269, 1271-72 & n. 8 (S.D. Ala. 2008); *Bush v. Bahia Sun Associates LP*, 2009 WL 963133, No. 8:07-cv-1314-T-17-EAJ, at*12 (M.D. Fla. April 8, 2009).

sales contract properly notified plaintiff about the right to rescind under ILSFDA[28] or plaintiff otherwise had notice of the right.[29]

Despite plaintiffs' insistence, a relatively recent decision by Florida's Fifth District Court of Appeal does not change this analysis. The court in *Plaza Court L.P. v. Baker-Chaput*[30] held the two-year right of rescission does not begin to run until the buyers receive proper notice of their right to rescind. But this decision is an outlier; nothing in the statute posits this outcome.[31] Congress easily could have included this kind of notice provision in the statute, but did not.[32] In the absence of congressional intent to extend the statute of limitations for rescission claims, this Court declines to read this right to notice into the statute.

The only plaintiffs who can bring *rescission* claims are those who filed their claims within two years of signing their respective purchase agreements—i.e., the Brealeys and the Byrnes.[33] And the only plaintiffs who can bring *damages* claims are those who filed their claims no more than three years after signing their respective purchase agreements—i.e., the 28 plaintiffs listed on Appendix C.[34] The remaining 14 plaintiffs listed on Appendix D, who filed their claims after three years of signing their respective purchase agreements, are completely time-barred from bringing a claim under ILSFDA.[35]

---

[28] Under 15 U.S.C. § 1703(c), the sales contract must state the buyer can rescind the contract within two years of signing if the seller does not provide the required property report.

[29] *Taylor v. Holiday Isle, LLC*, 561 F. Supp. 2d 1269, 1274-76 (S.D. Ala. 2008); *Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770, No. 6:09-cv-1268-Orl-19GJK, at *4-5 (M.D. Fla. Dec. 22, 2009); *Meitis v. Park Square Enterprises, Inc.*, 2008 WL 5351619, No. 6:08-cv-1080-Orl-22GJK, at n.2 (M.D. Fla. Dec. 17, 2008) (*citing Taylor*).

[30] 17 So. 3d 720 (Fla. 5th DCA 2009).

[31] *See Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770, No. 6:09-cv-1268-Orl-19GJK, at *4 (M.D. Fla. Dec. 22, 2009).

[32] The Court notes that Congress inserted a notice provision in § 1711(a)(2) which applies to some violations of § 1703(a)(2), but did not include a notice provision in § 1711(b), the section at issue in this case.

[33] *See* Appendix B.

[34] *See* Appendix C. Though the Brearleys and the Byrnes have met the time limitations both for rescission and damages, the Court notes a buyer can seek either damages *or* rescission pursuant to ILSFDA, but not both. *Borgo Real Estate, Inc. v. Resort Residence at Walkabout, LLC*, 2009 WL 3241978, at *2 (M.D. Fla. Oct. 5, 2009) (*citing Gaudet v. Woodlake Development Co.*, 413 F. Supp. 486, 490 (E.D. La. 1976) and *Orsi v. Kirkwood*, 1992 WL 511406, at *3 (E.D. Va. 1992), *affirmed*, 999 F.2d 86 (4th Cir. 1993)).

[35] *See* Appendix D.

**Plaintiffs have failed to produce any factual allegations to support their claim for damages.**

In addition to attempting to recover their deposits by bringing an action for rescission under § 1703(c), plaintiffs also claim they are entitled to return of their deposits under § 1709 because they suffered damages, i.e. paid their deposits, as a result of Mona Lisa's failure to provide a written property report, as mandated under § 1703(a)(1)(B). Defendants, in their motion for summary judgment, argue plaintiffs cannot characterize their deposits as actual damages because they cannot show they were damaged by Mona Lisa's failure to provide the property report. Plaintiffs' response insists that "[h]ad the Plaintiffs been provided with the ILSFDA mandated disclosures, they would have had the opportunity to not enter into the Purchase Agreements and to not pay the deposits."[36] Plaintiffs have not, however, explained in any way how the property report, had they gotten it, would have altered their decision to pay their deposits, which they were required to show under Rule 56(e).

As an initial matter, the Court notes that ILSFDA does not provide for statutory damages and that plaintiffs thus are required to show *actual* damages.[37] To show actual damages, plaintiffs must allege that Mona Lisa's failure to provide them with a property report caused them harm and that they are entitled to compensation for their injury. In their pleadings, plaintiffs have alleged their deposits constitute actual damages as a result of Mona Lisa's failure to provide a property report, but they do not explain why or how they were injured. Defendants argue in their motion for summary judgment that plaintiffs cannot show actual damages because plaintiffs received numerous disclosures similar to what would have been provided in the property report and that, therefore, nothing in the property report, had it been provided, would have changed plaintiffs' minds about purchasing a hotel-condo unit.[38]

---

[36] Doc. No. 135, p. 16; Doc. No. 144, p. 6.
[37] 15 U.S.C. 1709(a).
[38] Doc. No. 126, p. 22-23.

Because defendants argued in their motion for summary judgment that plaintiffs cannot show the debtor's failure to provide the property report caused plaintiffs any harm, plaintiffs, under Rule 56(e), then had the burden to produce some facts or evidence to support their claim.[39]  Instead, plaintiffs have merely repeated their assertion that had they "been provided with the ILSFDA mandated disclosures, they would have had the opportunity to not enter into the Purchase Agreements and to not pay the deposits."  This conclusory allegation, devoid of any basis in fact, is not enough to meet plaintiffs' burden of production in responding to defendants' summary judgment motion.  They were required to demonstrate with specific facts how the information in the property report would have altered their decision to pay deposits to Mona Lisa for their respective hotel-condo units.  Instead, they merely allege they would have "had the opportunity" not to pay the deposits.  On summary judgment, when defendants raised a credible doubt as to whether plaintiffs could prove actual damages, plaintiffs are required to show much more than these types of conclusory allegations.  Because they have not done so, and because defendants have sufficiently shown that plaintiffs' deposits do not constitute damages, plaintiffs' damages claims must fail.

Two recent decisions by the United States District Court for the Middle District of Florida,[40] decided under different ILSFDA subsections than those at issue in this case, do not buttress plaintiffs' argument.  In *Harari* and *Kiersz*, the District Court awarded damages equal to the amount of plaintiffs' deposits for the developer's failure to notify them of their rescission rights, a violation of § 1703(c).  The developer failed to tell buyers of their right to rescind the sales contract, and, as such, was not entitled to benefit from the two-year statute of limitations.  In this case, plaintiffs have not alleged their damages resulted from any failure to provide them with notice of their rescission rights; rather, they argue their "damages" arise from the debtor's failure to give them a property

---

[39] Under Rule 56(e), the nonmoving party, in responding to a properly made motion for summary judgment, "may not rely merely on allegations or denials in its own pleadings; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. Pro. 56(e).

[40] *Harari v. Seymour Int'l, Inc.*, Case No. 6:09-cv-1277-Orl-22-ACC-GJK (Doc. No. 25); *Kiersz v. Seymour Int'l, Inc.*, Case No. 6:08-cv-1664-ACC-GJK (Doc. No. 44).

report before signing their purchase agreements, as required by § 1703(a)(1)(B), which contains no separate rescission remedy.[41]  The District Court thus awarded damages for a different set of alleged wrongdoings pleaded under a different part of the statute.  These decisions accordingly have no bearing on the Court's decision here.  Plaintiffs have failed to support their damages claim with any factual allegations.

### The Updated Purchase Agreements are exempt from ILSFDA.

The only plaintiffs who timely filed rescission claims, the Brearleys[42] and the Byrnes,[43] are not entitled to relief under ILSFDA for another reason: paragraph 3 of the Updated Purchase Agreements contains a provision exempting the contracts from the statute.  Section 1702(a)(1)(2) of ILSFDA exempts developments from the statute where the developer is contractually obligated to complete construction within two years.  Paragraph 3 of the Updated Purchase Agreements includes language stating that Mona Lisa will complete construction of the units within two years of signing the contracts.

The Brearleys and the Byrnes argue that paragraph 3 of the Updated Purchase Agreements should not exempt the contracts from ILSFDA under § 1702(a)(1)(2) because Mona Lisa's promise to complete construction within two years was illusory or evasive for three reasons.  First, they argue the force majeure clause in paragraph 3 renders the promise illusory.  Second, they argue the promise was illusory because paragraph 13 of the Updated Purchase Agreements limits their remedies in the event of a breach by Mona Lisa.  Third, they argue that Mona Lisa added the provisions of paragraph 3 simply to "evade" the statute, and, as a result, these provisions should not exempt the agreements from ILSFDA.  None of plaintiffs' arguments is supported by law, and the Court finds that paragraph 3 exempts the Updated Purchase Agreements from ILSFDA.

---

[41] *Murray v. Holiday Isle, LLC*, 620 F. Supp. 2d 1302, 1312 (S.D. Ala. 2009).
[42] James and Joanne Brearley signed their sales contract on June 6, 2007 (Doc. No. 10-9) and filed their adversary proceeding on April 1, 2009.
[43] Maurice and Ann Marie Byrne signed their sales contracts on April 29, 2007 (Doc. No. 10-2) and filed their adversary proceeding on February 25, 2009.

Under the § 1702 exemption, ILSFDA does not apply to "the sale or lease of land under a contract obligating the seller or lessor to erect a building thereon within a period of two years."[44] Paragraph 3 of the Updated Purchase Agreements reads as follows:

> **3.    Completion of Unit.** Seller shall cause the construction of the Condominium and the Unit to be completed within a period of two (2) years from the date Purchaser signs this Contract.  The date for completion of such construction may not be extended by the Seller for any reason other than delays caused by circumstances beyond Seller's control, such as acts of God, or other grounds cognizable in Florida contract law as impossibility or frustration of performance. ...[45]

The first sentence of paragraph 3 obligates Mona Lisa to finish construction of plaintiffs' units within two years of signing their respective purchase agreements.  Plaintiffs, however, argue that the second sentence—the force majeure clause—renders illusory the promise to complete construction.

In a binding decision, the Eleventh Circuit Court of Appeals has held that a clause excusing performance due to conditions out of the developer's control does not make the promise to perform "illusory" or preclude a contract from the § 1702(a)(2) exemption.[46]  Even a force majeure clause that includes foreseeable, as well as unforeseeable, events is permissible.[47]  And, under *Stein*, a contract can be exempt from ILSFDA even if the two-year obligation to complete construction is subject to the provision that "delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the Unit is being constructed."[48]  Moreover, the conditions on the two-year construction obligation need not be limited to excuses that fall within the doctrine of impossibility.[49]  Florida courts recognize both impossibility and frustration as excuses to a

---

[44] 15 U.S.C. § 1702(a)(2).

[45] Doc. No. 10-9, p. 2-3; Doc. No. 10-2, p. 3, 17-18.

[46] *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849 (11th Cir. 2009) (clause stated that "…Seller shall not be responsible for any delay caused by acts of God, weather conditions, restrictions imposed by any governmental agency, labor strikes, material shortages or other delays beyond the control of the seller..."); *see also Rondini v. Evernia Properties, LLLP*, 2008 WL 793512, No. 07-81077-CIV (S.D. Fla. Feb. 13, 2008).

[47] *Stein*, 586 F.3d at 584; *see also Kamel v. Kenco/The Oaks at Boca Raton LP*, 321 Fed. Appx. 807, 2008 WL 4601715, No. 08-13692, at *3-4 (11th Cir. Oct. 16, 2008).

[48] *Van Hook v. the Residences at Coconut Point, LLC*, 2010 WL381363, No. 09-10067 (11th Cir. Feb. 3, 2010).

[49] *Aikin v. WCI Communities, Inc.*, 26 So.3d 691, 697 (Fla. 2d DCA 2010); see also *Jankus v. Edge Investors, L.P.*, 650 F. Supp. 2d 1248, 1255-56 (S.D. Fla. 2009).

breach of contract claim.[50]  In Florida, a sales contract containing a force majeure clause subject to

recognized excuses for performance under state law still qualify for the § 1702(a)(2) exemption.[51]

Virtually ignoring these recent decisions, plaintiffs cite a 20-year-old decision of the Florida

Supreme Court for the proposition that *any* conditions restricting the two-year obligation are

impermissible.[52]  First, *Samara* is contrary to the recent binding decisions of the Eleventh Circuit,

just discussed.  Second, Florida appellate courts repeatedly have limited *Samara*'s reach.[53]   For

example, the Second District Court of Appeals has held "acts of God, impossibility of performance,

and frustration of purpose are well-recognized defenses to nonperformance of a contract" under

Florida law, and that "well-recognized defenses to contractual non-performance" do not render the

two-year obligation illusory.[54]   More specifically, a Florida appellate court recently held that,

despite *Samara*, a force majeure clause that includes conditions beyond the seller's control does not

render the two-year obligation illusory.[55]   In this case, the Court finds the provisions of paragraph 3

of the Updated Purchase Agreements imposed a binding, non-illusory commitment on Mona Lisa to

complete construction within two years of signing the agreements.

Plaintiffs next point to paragraph 13 of the Updated Purchase Agreement, which limits

plaintiffs' available remedies, as a further proof that Mona Lisa's promise to perform was illusory.

Paragraph 13 reads as follows:

---

[50] The two doctrines are interrelated. Impossibility "refers to those factual situations, too numerous to catalog, where the purposes, for which the contract was made, have, on one side, become impossible to perform." *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.*, 174 So.2d 614, 617 (Fla. 2d DCA 1965). Frustration arises when "one of the parties finds that the purpose for which he bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration, or impossibility of performance by the other party." *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.*, 174 So.2d 614, 617 (Fla. 2d DCA 1965).
[51] *Ryan v. WTI Communities Inc.*, 2008 WL 255-7541, No. 3:08cv4/MCR (N.D. Fla. June 23, 2008); *Gentry v. Harborage Cottages-Stuart, LLLP*, 602 F. Supp. 2d 1239, 1245 (S.D. Fla. 2009); *Snavely Siesta Assocs. LLC, v. Senker*, 2010 WL 2010843 (Fla. 2d DCA, May 21, 2010).
[52] *Samara Dev. Corp. v. Marlow*, 556 So.2d 1097 (Fla. 1990).
[53] *See, e.g. Hardwick Properties, Inc. v. Newbern*, 711 So. 2d 35, 39-40 (Fla. 1st DCA 1998).
[54] *Aikin v. WCI Communities, Inc.*, 26 So.3d 691, 697 (Fla. 2nd DCA 2010), quoting *Mailloux v. Briella Townhomes, LLC*, 3 So. 3d 394, 396 (Fla. 4th DCA 2009); see also *Snavely Siesta Assocs., LLC v. Senker*, 2010 WL 2010843 (Fla. 2d DCA, May 21, 2010) (force majeure clause limited to impossibility or frustration of purpose does not preclude a sales contract qualifying for the § 1702(a) exemption).
[55] *Home Devco/Tivoli Isles, LLC v. Silver*, 26 So.3d 718, 723 (Fla. 4th DCA 2010).

   **13.**   **Seller's Default.**   If Seller fails to perform Seller's obligations under this
   Contract, then Purchaser shall have the right to terminate this Contract and receive a
   full refund of all Deposits and moneys paid by Purchaser hereunder, together with
   any accrued interest thereon, and Purchaser shall have the right to pursue claims for
   specific performance or damages.[56]

Again, under recent binding Eleventh Circuit precedent, limiting buyers' remedies to deposit

refunds and damages *or* specific performance, as paragraph 13 does here, does not make a builder's

two-year completion promise "illusory."[57]    Even prior to *Stein*, federal district courts in the

Southern District of Florida[58] and Florida state courts[59] reached same conclusion.

      As before, plaintiffs' reliance on *Samara*[60] is misplaced.   Although that case held that a

purchase contract was not exempt from ILSFDA because it limited the buyers' remedies to either

specific performance or damages, recent holdings by four of Florida's five District Courts of Appeal

cast significant doubt on whether the holding of *Samara* is still good law.[61]

      In this case, if Mona Lisa defaults, the buyers have the right to specific performance or

damages, and the right to terminate the contract and receive a full refund of all deposits paid.[62]   The

purchase agreements do not limit the kind of damages plaintiffs could recover.   By contrast, the

contract in *Stein*[63] limited damages to "actual and direct damages."   Yet, even in that case, the

Eleventh Circuit found the developer's obligation to perform under the contract was not illusory.   In

short, there is little support for plaintiffs' argument, and the vast majority of Eleventh Circuit and

Florida cases are in agreement with *Stein*, not *Samara*.   Accordingly, the Court finds that the

---

[56] Doc. No. 10-9, p. 6; Doc. No. 10-2, p. 6-7, 21.
[57] *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849 (11th Cir. 2009).
[58] *Barry v. Midtown Miami No. 4, LLC*, 651 F. Supp. 2d 1320, 1324 (S.D. Fla. 2008); *Rondini v. Evernia Properties, LLLP*, 2008 WL 793512, No. 07-81077-CIV (S.D. Fla. Feb. 13, 2008).
[59] *See, e.g., Hardwick Properties, Inc. v. Newbern*, 711 So.2d 35, 39-40 (Fla. 1st DCA 1998).
[60] *Samara Dev. Corp. v. Marlow*, 556 So.2d 1097 (Fla. 1990).
[61] *See, e.g., Hardwick Properties, Inc. v. Newbern*, 711 So.2d 35, 39-40 (Fla. 1st DCA 1998); *Aikin v. WCI Communities, Inc.*, 26 So.3d 691, 697 (Fla. 2nd DCA 2010); *Home Devco/Tivoli Isles, LLC v. Silver*, 26 So.3d 718, 723 (Fla. 4th DCA 2010); *Mailloux v. Briella Townhomes, LLC*, 3 So.3d 394, 396 (Fla. 4th DCA 2009); *Plaza Court, LP v. Baker-Chaput*, 17 So.3d 720, 726 (Fla. 5th DCA 2009) (a contract can excuse performance under the doctrine of impossibility and still qualify for the § 1702 exemption).
[62] Doc. No. 10-9, p. 6.
[63] 586 F.3d 849 (11th Cir. 2009).

remedies listed in paragraph 13 of the Updated Purchase Agreements did not render illusory Mona Lisa's obligation to complete construction within two years.

Finally, plaintiffs argue that the Updated Purchase Agreements are not exempt from ILSFDA because Mona Lisa added the provisions of paragraph 3 to "evade" compliance with the statute. Under ILSFDA, an exemption will not apply if the mechanism for qualifying for the exemption was "adopted for the purpose of evasion."[64]  Courts have narrowly interpreted this restriction, making it difficult for a plaintiff to show a developer evaded the statute. Although not all courts follow the Eighth Circuit's requirement to show *fraudulent* intent in evading the statute,[65] a developer does not evade the statute merely by taking "conscious action to ensure a [development] meets the requirements of one or more exemptions that are explicitly provided in the statute."[66]  As one court recently found, "the mere fact that a developer structures the sale of a subdivision in a way that makes the project exempt from the [ILSFDA] is not, without more, sufficient to conclude that the seller has taken such actions for the purpose of evading the [ILSFDA]'s requirements."[67]

Under *Gentry*, a developer must simply establish it had "some bona fide, real-world objectives that manifests a legitimate business purpose."[68]  This is an exceedingly low hurdle to clear. It is a legitimate business purpose for a developer to intentionally qualify for the exemption in order to save time and money on a project.[69]  A defendant can meet this low threshold by submitting a company officer's affidavit stating that using ILSFDA allowed for greater flexibility in developing the project and saved the company time and money.[70]

---

[64] 15 U.S.C. § 1702(a).
[65] *Gentry v. Harborage Cottages-Stuart LLLP*, 602 F. Supp. 2d 1239, 1247-48 (S. D. Fla. 2009), disagreeing with the 8th Circuit's holding in *Atteberry v. Maumelle Co.*, 60 F.3d 415, 421 (8th Cir. 1995) that a plaintiff must make a showing of fraudulent intent to evade the statute.
[66] *Bodansky v. Fifth on the Park Condo, LLC*, Nos. 09 Civ. 4651 (DLC), 09 Civ. 6433 (DLC), 2010 WL 334985, *8 (S.D.N.Y. January 29, 2010).
[67] *Gentry*, 602 F. Supp. 2d at 1247.
[68] *Id.* at 1248.
[69] *Double AA Int'l Investment Group, Inc. v. Swire Pacific Holdings, Inc.*, 674 F. Supp. 2d 1344, 1355 (S.D. Fla. 2009).
[70] *Swire*, 674 F. Supp. 2d at 1355.

In this case, Mona Lisa has asserted a legitimate business purpose for including the two-year commitment to complete construction.  William Haberman, a managing member of Mona Lisa, states in his affidavit that Mona Lisa's construction lender, BankFirst, required the contracts to include the provision in order to invoke ILSFDA's exemption.[71]  Mona Lisa took a conscious action to qualify for one of the exemptions permitted under ILSFDA because the debtor could not get funding without the exemption, a legitimate business purpose.  The Court thus finds that Mona Lisa did not "evade" the statute by adding the two-year commitment to finish construction.[72]  Accordingly, provisions of the Updated Purchase Agreements exempted Mona Lisa from ILSFDA.

In summary, defendants are entitled to summary judgment on Count I.  Plaintiffs had two years—not three—to rescind their contracts and only the Brearleys and the Byrnes timely filed rescission claims.  All other Plaintiffs' rescission claims are time-barred.  Moreover, plaintiffs' damages claims all fail under Rule 56 because they are completely unsupported by any factual allegations.  Finally, the Brearleys and Byrnes who signed Updated Purchase Agreements have no claim under ILSFDA because those agreements are exempt from the Act.  So, even assuming ILSFDA applies in this case, no plaintiff has an actionable claim for relief under the statute. Defendants are entitled to summary judgment on Count I.

## MONA LISA DID NOT VIOLATE EITHER
## FEDERAL OR STATE SECURITIES LAWS (COUNTS II AND III).

In Count II, plaintiffs allege that the hotel-condo units they purchased from Mona Lisa were unregistered securities under § 77e of the Federal Securities Act of 1933.[73]  Likewise, in Count III plaintiffs allege Mona Lisa violated the Florida Securities and Investor Protection Act ("FSIPA")[74]

---

[71] Doc. No. 125, ¶ 20.

[72] As an aside, the Court notes that adding paragraph 3 did not simply exempt Mona Lisa from ILSFDA. The provision imposed an additional burden on Mona Lisa to complete construction within two years providing greater protections for buyers by mandating completion within a relatively short period of time.

[73] 15 U.S.C. § 77a, *et seq.*

[74] Fla. Stat. § 517.011, *et seq.*

by selling unregistered securities. Because FSIPA parallels almost exactly the 1933 Securities Act, the Court's analysis under the federal statute also determines the outcome under FSIPA.

Under § 77e of the 1933 Securities Act, the seller of any "investment contract" or security must file a registration statement with the SEC. A real estate sales contract can qualify as an "investment contract" or a "security" when the buyer "participate[s] in a profit-sharing or rental pooling arrangement upon completing the transaction, or when the transaction includes restrictions limiting the owner's control over the property."[75] Plaintiffs here contend the purchase agreements are securities and that Mona Lisa was required to file a registration statement pursuant to § 77e. Defendants argue the contracts are not securities. The Court agrees.

The *Howey* test governs whether a real estate sales contract is a "security" under the 1933 Securities Act.[76] Sales contracts are securities when: (1) individuals make an investment of money in (2) a common enterprise and (3) when the expectation of profits is to be derived solely from the efforts of others.[77] A party must prove all three prongs of the *Howey* test to establish that a real estate sales contract is a "security" under the Act. Given that each of plaintiffs made an investment of monies by placing a deposit to purchase a hotel-condo unit, the parties agree the first prong is met. The parties, however, dispute whether plaintiffs have established the second and third prongs.

As to the second *Howey* factor, in the Eleventh Circuit, a "common enterprise" exists when there is vertical commonality.[78] The Eleventh Circuit's "broad vertical commonality" test requires plaintiff to show that the likelihood of the investment's financial success depends on the efforts of a third-party manager.[79] That is, the buyers are dependent upon a third party who manages and

---

[75] *SEC v. Kirkland*, 521 F. Supp. 2d 1281, 1289 (M.D. Florida 2007); *Alunni v. Development Resources Group, LLC*, 2009 WL 2579319, No. 6:08-CV-1349-Orl-31DAB (M.D. Fla. Aug. 18, 2009), *citing United Housing Foundation Inc. v. Forman*, 421 US 837 (1979).

[76] *Securities and Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293 (1946).

[77] *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999).

[78] *Id* at 1199 (11th Cir. 1999). A common enterprise also is possible when there is horizontal commonality involving a pooling of interests or profits in the transaction. *SEC v. Kirkland*, 521 F. Supp. 2d 1281, 1292 (M.D. Fla. 2007). No horizontal commonality exists in this case because it is undisputed that there was no pooling arrangement involved with this project.

[79] *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 732 (11th Cir. 2005).

controls their investments and is solely responsible for the future financial success of the investment.  For example, the shareholder of a publicly-traded company does not have direct control over the future value of a company's shares because the shareholder does not have direct control over the company's day-to-day operations and thereby its ultimate financial success.  The likelihood that the company's stock value will increase instead depends on how well the company's managers operate the company.

The critical factor in determining vertical commonality then is "the amount of control that the investors retain under their ... agreements."[80]  The District Court for the Middle District of Florida has held that when condominium buyers gave up a significant amount of control to the condominium developer and were dependant on the developer to realize a return on their investment, the sales contracts were a "security."[81]  Some factors that led to the court's decision in *Morris* include that the condominium units were designed to be rented out as hotel rooms, that all revenue was to be shared between the buyers and the developer, and that the developer managed the rental business.[82]  Under those circumstances, vertical commonality existed between the condo-unit buyers and the developer because the likelihood of the investment's success was almost entirely dependent on the developer's performance.  The more control a developer retains over a buyer's unit and its profitability, the more likely the vertical commonality prong is met.

In this case, no vertical commonality exists.  Unlike *Morris*, plaintiffs here retained a significant amount of control over their individually-owned units under the purchase agreements and were not necessarily dependant on Mona Lisa or any other third party to manage their investment. Certainly, each unit came with restrictions that limited plaintiffs' control.  For example, each buyer could occupy the hotel-condo unit for only 179 days per year.  But, on the other hand, the buyer could unilaterally decide how to use the unit during the remaining 181 days of the year.

---

[80] *Albanese v. Fla. Nat'l Bank*, 823 F.2d 408, 410 (11th Cir. 1987).
[81] *Morris v. Bischoff*, 1997 WL 128114, at *5, No. 96-1384-Civ-T-17A (M.D. Fla. March 4, 1997).
[82] *Id.*

Moreover, when it comes to deciding with whom and whether to sign a rental agreement—arguably the most important decisions concerning the ability to make money from the unit—each owner individually retained near total control over the unit.  A buyer *could* use the service offered by Mona Lisa's affiliate to rent a unit, but renting the unit was neither required nor necessarily an integral part of unit ownership.  A buyer also *could* have used another rental company totally unrelated to the debtor.  A buyer lastly *could* leave the unit vacant for the entire 181 days the buyer could not personally occupy the unit.  The choice and the control are left solely to the buyer, not the developer.

The amount of control retained by plaintiffs demonstrates how little dependence they have on Mona Lisa to realize any return on their "investments."  Whether a particular buyer treats his hotel-condo unit as an investment is up to each buyer.  Some buyers may rent out their unit for 181 days per year using the debtor's rental management company; other buyers may not rent their unit for even one day.  Profitability is not left in the hands of Mona Lisa or its management company.  As such, no common enterprise exists.

As to the third prong of the *Howey* test, plaintiffs could not have reasonably expected to profit from Mona Lisa's efforts because Mona Lisa's promotional materials[83] did not highlight the investment aspect of hotel-condo ownership.  The 1933 Securities Act defines the purchase of a security as when an individual "parts with his money in the hope of receiving profits from the efforts of others."[84]  The Act thus distinguishes securities transactions from those in which the buyer's purpose is "to use or consume the item purchased."[85]  For this reason, courts focus on how the developer markets the properties in its promotional materials.  When the developer highlights

---

[83] The debtor distributed various brochures and materials on a website to interested purchasers.  The materials are attached as exhibits to plaintiffs' affidavits in the Bruno Adversary as Doc. No. 49, Exhibit 2 (the "Small Brochure"); Doc. No. 50, Exhibit No. 3 (the "Large Brochure"); and Doc. No. 51, Exhibit 3 (the "Website Materials").

[84] *United Housing Foundation Inc. v. Forman*, 421 U.S. 853, 858 (1975).

[85] *Id.*

the investment aspects of a development, as opposed to the amenities and unit features, this is a strong indication the condominiums are securities.[86]

Here, Mona Lisa did not emphasize the investment aspect of hotel-condo ownership. The promotional materials instead emphasized using the units for vacation and recreational purposes and highlighted the many amenities of the development. Although there were statements in the materials suggesting that the buyers *could* rent their units as hotel rooms, these statements were not the focus of the materials. Furthermore, the purchase agreements include provisions stating that the buyers acknowledge that the seller did not make representations about economic benefits or any tax benefits to be derived from owning a unit.[87]

Mona Lisa's promotional efforts are thus distinct from those of a developer who markets the development as a passive investment opportunity.[88] In *Kirkland*, partly because the developer highlighted the investment opportunities of condo ownership, the District Court for the Middle District of Florida held that the 1933 Securities Act applied to condominium sales contracts because the buyers expected to profit from the developer's efforts to rent their units. By contrast, Mona Lisa's advertising materials focused almost entirely on the amenities available to buyers when they vacationed in their units. Plaintiffs did not sign their sales contract expecting to gain a profit from the efforts of others.

Recent SEC no-action letters[89] and the SEC's 1973 guidelines[90] bolster the Court's finding that the third *Howey* prong is not met here. Each of the four no-action letters advised respective condominium developers that the 1933 Securities Act likely did not apply to the sale of their condo units in part because the developers did not focus their promotional efforts on the development's

---

[86] *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1292 (M.D. Fla. 2007).
[87] *See, e.g.*, Doc. No. 10-1, p. 9, ¶ 27(a).
[88] *E.g., SEC v. Kirkland*, 521 F. Supp. 2d 1281 (M.D. Fla. 2007).
[89] SEC no-action letters are not binding precedent, but courts can rely on them for their persuasiveness. *Allaire Corp. v. Okumus*, 433 F.3d 248, 254 (2d Cir. 2006).
[90] *Guidelines As to the Applicability of the Federal Securities Laws to Offers and Sales of Condominiums or Units in a Real Estate Development, Securities Act*, 1973 WL 158443, Release No. 33-5347, 1 Fed. Sec. L. Rep. (CCH) ¶ 1049 (Jan. 4, 1973).

potential investment value.[91]    In each case, the developers did not emphasize the potential economic

benefits of purchasing a unit, did not make cash flow estimates or representations of tax advantages,

did not have rent pooling agreements, and did not mandate a rental program.  The only significant

distinction between the developments described in these letters and Mona Lisa's is that the Mona

Lisa buyers could occupy their units for 179 days, whereas some of the sales contracts in the SEC

no-action letters appear to have imposed even more stringent limitations on buyers, sometimes

limiting the buyer's use to two weeks per year.[92]  The SEC's guidelines are in accordance with these

no-action letters.  They state that a real estate transaction is not subject to the 1933 Securities Act

when the real estate units "are not offered and sold with emphasis on the economic benefits to the

purchaser to be derived from the managerial efforts of others...."[93]  Here, the promotional materials

did not emphasize the economic benefits of hotel-condo ownership.

Applying the *Howey* test, the Court finds under the undisputed facts of this case that,

although buyers did pay a deposit to purchase a unit, no common enterprise exists nor did the

buyers have a reasonable expectation of profits to be derived solely from the efforts of the debtor or

its management company.  As such, plaintiffs have failed to establish the second and third prongs of

the *Howey* test.  The purchase agreements are not securities as defined under the 1933 Securities

Act, and, as a result, also are not securities under the FSIPA.  Mona Lisa did not violate either act by

failing to register the purchase agreements.   Defendants are entitled to summary judgment on

Counts II and III.

---

[91] *Diamond Cove Associates*, 1990 WL 287055 (Sept. 27, 1990) (This case does not identify the real estate development specifically as a "condo-hotel." Rather, it is a condo development which is heavily oriented towards units being rented out to vacationers.  The developer anticipated less than 20 percent of units serving as primary residences.); *FC Beach Joint Venture*, 1998 WL 278529 (May 29, 1998); *Int'l Investment Properties, Inc.*, 1995 WL 451934 (July 28, 1995); *Intrawest Corp.*, 2002 WL 31626919 (Nov. 8, 2002).

[92] The *Intrawest* no-action letter strongly suggests buyers in that development could use their units for only two weeks a year by asking "what does the purchaser do with this resort property with the other 50 weeks of the year?" Section III.B. The SEC staff still recommended no enforcement action.

[93] *Guidelines*, 1973 WL 158443, at *3.  The Court notes that the SEC Guidelines also state that "limitations on the period of time the owner may occupy the unit…suggests that the purchaser is in fact investing in a business enterprise, the return from which will be substantially dependent on the success of the managerial efforts of other person."  However, the more recent SEC no-action letters indicate this is only one factor among many that should be considered, and that how the developer advertised the units is also an important factor.

**A FACTUAL DISPUTE PRECLUDES SUMMARY JUDGMENT
ON WHETHER MONA LISA IMPROPERLY USED
BUYERS' DEPOSITS IN VIOLATION OF FLA. STAT. § 718.202 (COUNT IV).**

Florida Statute § 718.202(1) requires a condominium developer to pay into an escrow account all purchaser deposits up to 10 percent of the purchase price of the unit if construction of the condominium project is not substantially complete at the time the developer contracts to sell the unit.  However, a developer may retain all purchaser deposits if an alternative assurance (for example, a surety bond) has been posted in an amount equal to the escrow requirements of the Florida Condominium Act.[94]  Florida Administrative Code Rule 61B-17.009(1) states that an:

> alternative assurance must be approved by the Division Director [of the Division of Florida Land Sales, Condominiums and Mobile Homes of the Department of Business and Professional Regulation, State of Florida] *prior to* the use by a Developer of the sales deposits intended to be assured.  Pending approval, sales deposit funds to be assured by the alternative assurance must be placed in escrow. (Emphasis added).

In Count IV, Plaintiffs allege Mona Lisa violated Fla. Stat. § 718.202 by withdrawing plaintiffs' deposit escrow funds before the Division Director approved Mona Lisa's surety bond. Because construction of the units was not completed when plaintiffs signed the purchase agreements, Mona Lisa was required to establish an escrow account for plaintiffs' deposits up to 10 percent of the purchase price.  Mona Lisa did this, as evidenced by the Escrow Agreement.[95] But Mona Lisa also purchased a surety bond as alternative assurance to allow it to withdraw 100 percent of plaintiffs' deposits.  Plaintiffs contend that all the funds were withdrawn as of December 1, 2006, *before* Mona Lisa received the Division Director's approval, but they have not provided any factual basis for their assertion.

As this Court previously noted, if "Mona Lisa can establish that it did in fact obtain the District Director's approval of the Surety Bond as an alternative assurance *prior to* withdrawing

---

[94] Fla. Stat. § 718.202(1).
[95] Prospectus, Ex. 4, Doc. No. 48; Doc. No. 125, Ex. 1.

plaintiffs' escrow funds, Count IV surely must fail."[96]  Defendants have provided two pieces of evidence to establish that Mona Lisa obtained the District Director's approval:  an affidavit signed by William Haberman and a website link[97] to the Florida Department of Business & Professional Regulation public report for the Division Director's approval of the surety bond. Although the website link provides the date on which the Division Director approved the surety bond (January 9, 2007), neither it nor the Haberman affidavit provides the key date on which Mona Lisa withdrew the deposits.[98]  Was it before or after Mona Lisa withdrew the last 10 percent of plaintiffs' deposits?

Neither party has produced any evidence that establishes when Mona Lisa withdrew the escrow funds.  The Court therefore finds that a material factual dispute exists precluding summary judgment as a matter of law.  Summary judgment on Count IV is denied as to both parties.

## MONA LISA MADE NO MATERIAL, ADVERSE CHANGE TO THE PROJECT IN VIOLATION OF FLA. STAT. § 718.503 (COUNT V).

Florida Statute § 718.503 allows a condominium unit buyer to rescind a purchase agreement within 15 days "after the date of receipt from the developer of any amendment which materially alters or modifies the offering in a manner that is adverse to the purchaser."  In Count V, plaintiffs allege Mona Lisa violated § 718.503 by making two materially adverse changes to the design of the development's common areas.  They first allege that Mona Lisa reduced the size of the pool deck by half.  Second, they allege Mona Lisa's decision to eliminate a rooftop deck on top of the hotel amenities building, in favor of adding space to the lower floors of that building, was a material adverse change to the project.  The Court will address each argument in turn.

---

[96] Memorandum Opinion Denying Defendant's Motion to Dismiss at 12 (Doc. No. 92 in the Bruno Adversary; Doc. No. 40 in the Dodsworth Adversary).
[97] https://www.myfloridalicense.com/AdditionalInfo.asp?SID=&licid=3191642
[98] Doc. No. 125, ¶ 15.

As to the pool deck, plaintiffs contend Mona Lisa reduced the size of the deck area surrounding the common area pool to nearly half the size originally represented to them in the Prospectus.[99]  It states the pool would be "surrounded by approximately twenty-three thousand five hundred (23,500) square feet of decking," and would provide space for about 150 people. Plaintiffs allege that the decking as built provides only 12,096 square feet of actual deck space.

Plaintiffs are correct that 12,096 square feet of the pool decking is comprised of hard concrete pavers, but they seem either to ignore or to discount entirely the additional 11,500 square feet of landscaping and walkways interwoven with this concrete.  By doing so, plaintiffs have completely misrepresented the as-built pool deck.  In fact, the completed project has a usable pool area of nearly 23,500 square feet containing ample sitting areas for 150 people, plus elegant palm trees, planters, walkways, and other landscaping features that break up the deck space.  Although plaintiffs are correct that the Prospectus states the pool deck would be 23,500 square feet, it does not state the pool deck would provide 23,500 square feet of open, un-landscaped deck space.  Moreover, Mona Lisa's architectural drawings of the pool deck never changed—they always represented that the *total space* available around the pool was approximately 23,500 square feet and, as built, it is as represented.[100]

Plaintiffs are grasping at straws by complaining about a spectacular pool deck that in all material respects was built as originally represented to them.  The square footage of the entire area never changed; the capacity is as represented in the Prospectus—150 people.  Accordingly, the Court finds there were *no* changes made to the pool deck plans and representations, let alone any material adverse changes.

As to the elimination of the rooftop deck, plaintiffs argue that Mona Lisa represented to them in its promotional materials[101] that there would be a fourth-floor observation deck on top of

---

[99] Doc. No. 48, p. 5.
[100] *See* Prospectus, Doc. No. 48, and architectural renderings therein.
[101] Specifically, see Small Brochure, pg. 10; Large Brochure, pg 8; Website Material, pg 1.

the hotel amenities building and that Mona Lisa's decision not to build the roof deck materially and adversely affected the value of the project.  Mona Lisa does not dispute that no roof deck was built, but they argue that eliminating the roof deck was not a material adverse change because they substituted other enhancements that *added* overall value to the project. Specifically, Mona Lisa substantially enlarged the restaurant and bar areas of the first floor of the hotel amenities building and built a covered balcony for dining on the second floor of the building.

As an initial matter, whether an amendment to a design plan is "material" and "adverse" under § 718.503 is determined by an objective standard.[102]  The question is: "would a reasonable buyer under the purchase agreement find the change to be so significant that it would alter the buyer's decision to enter into the contract?"[103]  The actual buyer's own thoughts are irrelevant. The inquiry is completely focused on whether the change significantly decreased the value of the original, proposed development plans from a reasonable buyer's perspective.

Plaintiffs have cited three cases they contend support the proposition that any reduction or elimination of amenities is a material and adverse change.[104]  In fact, none does.  Two of the cases were decided under another statute—Fla. Stat. § 718.506.[105]  One of these cases, *Gentry*, at most stands for the proposition that, assuming their falsity, numerous alleged misrepresentations *could* amount to a material misrepresentation under Fla. Stat. § 718.506.  In that case, the court merely held that such allegations were enough to survive a motion to dismiss.[106]  The second case decided under Fla. Stat. § 718.506, *Klinger*,[107] held that the elimination of an outdoor jogging path and VITA course was "substantial noncompliance" with the planned development

---

[102] *See D & T Properties, Inc. v. Marina Grande Associates, LTD.*, 985 So.2d 43, 49 (Fla. 4th DCA 2008).

[103] *Id.*

[104] Pls.' Motion for Sum. J. at 14, Doc. No. 45, citing *Gentry v. Harborage Cottages-Stuart, LLLP*, 2008 WL 1803637, 2-4, Case No. 08-14020-CIV (S.D. Fla. April 21, 2008); *Klinger v. Zaremba Florida Company*, 502 So.2d 1252, 1254 (Fla. 3d DCA 1986); and *Mastalar v. Hollywood Ocean Group, L.L.C.*, 10 So.3d 1114 (Fla. 4th DCA 2009).

[105] *Gentry*, 2008 WL 1803637 at *3; *Klinger*, 502 So.2d at 1254.

[106] *Gentry*, 2008 WL 1803637 at *3.

[107] *Klinger*, 502 So. 2d at 1253-54.

scheme.  In so holding, the court found the condo unit purchasers had a substantial interest in the development's recreational facilities and amenities.[108]  At best, this case may tend to support plaintiffs' position that they had an interest in the common areas of the Mona Lisa development.  But the case does not establish a per se rule that eliminating a common area element automatically establishes a violation of § 718.503, insofar as that statute was not even at issue in the case.

The one case cited by plaintiffs in which § 718.503 *was* at issue also fails to support plaintiffs' argument.[109]  *Mastaler* held that the addition of nine private cabanas around a condominium development's pool was a material adverse change.[110]  The court reasoned that "a reasonable buyer would find the change significant to their decision to enter the contract" because the pool's available deck space was substantially reduced by the cabanas and the cost to use a cabana was material, at $225,000.[111]

Unlike the changes made to the pool deck in *Mastaler*, the changes Mona Lisa made to the hotel amenities building are not overtly either material or adverse.  In that case, the court found that adding nine private cabanas around the pool deck unquestionably was adverse to plaintiff because the cabanas "hinder[ed] his use of the common area around the pool."[112]  Here, Mona Lisa compensated for eliminating the roof deck by *adding* other significant enhancements to the hotel amenities building, an offset that was not present in *Mastaler*.

Whether the offset of the enhanced restaurant and bar area compensates for the removal of the roof deck is a factual issue.  Defendants, unlike plaintiffs, have provided competent evidence in support of their request for summary judgment to establish that the hotel amenities building redesign was neither material nor adverse, and, moreover, was a value *additive* change.

---

[108] *Id.* at 1254.
[109] *Mastaler v. Hollywood Ocean Group, L.L.C.*, 10 So.3d 1114 (Fla. 4th DCA 2009).
[110] *Id.* at 1116.
[111] *Id.*
[112] *Id.*

Mr. Haberman, Mona Lisa's managing member, in his affidavit,[113] provides insight into Mona Lisa's decision making process, and gives two main reasons Mona Lisa chose to eliminate the rooftop deck.  First, he states that Mona Lisa's architects and professional management company recommended it add more space on the first and second floors.[114]  Applicable Osceola County zoning provisions, however, required reallocating the "usable" space from somewhere else in the building to those areas.  Second, Haberman states that other applicable building codes would have required Mona Lisa to build a 42 inch tall, solid safety wall around the perimeter of the roof deck, which would have greatly reduced the view of the below pool deck and made the rooftop area less aesthetically pleasing.  Thus, Mona Lisa's design team decided to reallocate the usable space from the rooftop deck to the first and second floors of the building.  Haberman further states that this redesign cost Mona Lisa an additional "several hundred thousand dollars to complete," but that it decided to spend the extra money because its experts believed the changes *added* value to the overall development.[115]

Mona Lisa has provided convincing evidence that the changes, while perhaps material, were certainly not adverse to buyers.  Under Rule 56(e), plaintiffs then had the burden to come forward with some facts, affidavits, or other evidence to establish a genuine issue of material fact for trial.   In response, however, plaintiffs did not submit anything to rebut Haberman's statements that the change increased the value of the project.  Nowhere does plaintiffs' expert, Daniel Robinson, opine that the overall value of the hotel amenities building was adversely impacted as a result of the redesign.[116]  Plaintiffs have failed to raise any credible factual allegations that would establish a genuine issue as to whether the redesign of the hotel amenities building was materially adverse.  The Court, therefore, finds that a reasonable buyer in this case would not find the changes so significant that they would alter the buyer's decision to purchase a

---

[113] Doc. No. 121.
[114] Doc. No. 121 at ¶ 33.
[115] *Id*. at ¶ 39.
[116] Doc. No. 46 in the Bruno Adversary; Doc. No. 48 in the Dodsworth Adversary.

unit in the Mona Lisa development.  If anything, based on Mr. Haberman's affidavit, the changes made buying a unit *more* attractive to a reasonable buyer.  Accordingly, defendants are entitled to summary judgment in their favor on Count V.

## MONA LISA MADE NO MATERIAL MISREPRESENTATION IN VIOLATION OF FLORIDA STATUTE § 718.506 (COUNT VI).

Florida Statute § 718.506 provides condominium purchasers a cause of action for rescission of a condominium purchase agreement when a purchaser reasonably relies on any false material statement by a developer.  To state a cause of action for rescission under Fla. Stat. § 718.506, a party must establish: (1) a false or misleading statement; (2) the statement was published in promotional materials; (3) the statement was material; and (4) reliance on the statement was reasonable.[117]  In Count VI, plaintiffs allege that Mona Lisa made false material statements in its promotional materials concerning the size of the pool deck, the presence of a rooftop observation deck, and various other alleged misrepresentations concerning the size of the units, the development design, and the cost of monthly assessments.[118]  The Court will address each of plaintiffs' claims on summary judgment in turn.

As to the size of the pool deck, plaintiffs' claim is unfounded because, as the Court already has found, the size of the pool deck *is* as represented in the Prospectus.  Plaintiffs' argument is based entirely on the fact that the Prospectus promised a pool deck of approximately 23,500 square feet, and the pool deck as built is comprised of approximately 12,036 square feet of hard concrete pavers and about 11,500 square feet of landscaping features.  But, again, nothing in the Prospectus promised 23,500 square feet of un-landscaped, bare deck space.  The pool deck was built exactly to the specifications provided to plaintiffs in the Prospectus.  The

---

[117] *Kaufman v. Swire Pacific Holdings, Inc.*, 675 F.Supp.2d 1148, 1152 (S.D. Fla. 2009).

[118] Specifically, plaintiffs allege Mona Lisa misrepresented that (1) the units would be part of a development totaling three buildings; (2) the development would include an on-site, high-end restaurant and bar with over 6,000 square feet and additional outdoor patio seating in the courtyard; (3) the development would include over 3,000 square feet of reception and meeting space; (4) the actual units square footage and features were larger than as-built; and (5) the amount of monthly condominium owners association and hotel amenities unit fees would be lower than as charged. Amended Complaint, Doc. No. 10, ¶¶ 159-180.

Court accordingly finds that Mona Lisa's statements regarding the pool deck were not false or misleading in any way.

As to the rooftop deck allegations, Mona Lisa's statements were not false or misleading because Mona Lisa did, at the time the representations were made, plan and intend to build a rooftop deck. A statement is false or misleading only if it was false or misleading at the time it was made.[119] As Haberman explains in his affidavit, Mona Lisa did originally plan to build a rooftop deck, as shown in the building plans included within the Prospectus, so the statement was not false when it was made. Later, as discussed above, Mona Lisa decided to change the design of the hotel amenities building to enhance its value, at significant expense to Mona Lisa. Haberman makes clear that Mona Lisa's design team made these changes to *add* value to the project at *no* additional cost to plaintiffs, not to skimp on building costs. Plaintiffs have not provided any facts or evidence to contradict Haberman's explanation. The Court accordingly finds that Mona Lisa never made a false or misleading statement to plaintiffs by advertising a rooftop deck.

Plaintiffs next allege that Mona Lisa made material misstatements in its promotional materials concerning the size of the units, the design of the development,[120] and the amount of monthly condominium owners' association fees.[121] Plaintiffs contend that at the time Mona Lisa provided this information, "[Mona Lisa] knew, or should have known, that the information was false and would be changed as reflected in the amendments and changes made by Mona Lisa in

---

[119] Although neither the statute nor Florida case law under § 718.506 provide any guidance on the issue of what constitutes a "false" or "misleading" statement, courts generally find that similar statutes require that the representor knew or should have known the statement was false or misleading at the time it was made. *See, e.g., Rollins, Inv. V. Butland*, 951 So.2d 860, 877 (Fla. 2nd DCA 2006) (finding misleading advertising [under § 817.41] is a particularized form of fraud requiring plaintiffs to prove each of the elements of common law fraud in the inducement); *Joseph v. Liberty Nat. Bank*, 873 So.2d 384, 388 (Fla. 5th DCA 2004) (finding § 817.41 requires plaintiff to prove representor knew or should have known falsity of statement, as when proving fraud in the inducement).

[120] Specifically, that (1) the units would be part of a development totaling three buildings; (2) the development would include an on-site, high-end restaurant and bar with over 6,000 square feet and additional outdoor patio seating in the courtyard; and (3) the development would include over 3,000 square feet of reception and meeting space.

[121] Amended Complaint at ¶¶159-180, Doc. No. 10.

the Declaration of Condominium of Mona Lisa at Celebration, a Condominium Hotel recorded

on October 26, 2007 in the Osceola County, Florida, Official Records at Book 03585…and the

final as built condition." But, other than changes related to the hotel amenities building redesign,

the 2007 Declaration of Condominium[122] does not differ in any respect from the 2005

Declaration of Condominium that was included with the Prospectus.[123] Each Declaration shows

identical unit sizes and identical percentage condominium assessments for each unit. The only

changes to the architectural drawings are related to the hotel amenities unit redesign, which

removed the roof deck and added space on the first and second floors of the building. There is

also no question that Mona Lisa has built three buildings, including a hotel amenities building

that includes a high-end restaurant and bar with over 6,000 square feet and patio seating, and

which includes over 3,000 square feet of reception and meeting space.[124] Plaintiffs' allegations

to the contrary are unsupported by the undisputed facts.

Plaintiffs' last contention that a material issue of fact exists as to whether the units were

actually built to specifications also is not supported by any evidence. Plaintiffs have simply

alleged that it is *possible* the units were not built to specifications and request time to examine

the units; but they cannot establish a genuine issue of material fact for trial on bare allegations

alone. Under Rule 56, on a motion for summary judgment, conclusory allegations—without

specific supporting facts—have *no* probative value.[125] Plaintiffs thus must present some specific

factual allegations to raise a legitimate question of fact as to whether the units were built to

specifications. Other than continue to speculate that Mona Lisa *may* have built certain units

differently than represented, they have supplied no credible evidence, even though they have had

---

[122] Ex. 9 to Robison Affidavit, Doc. No. 46; Ex. 1 to Answer to Amended Complaint, Doc. No. 89.

[123] *Compare* 2005 Declaration of Condominium and 2007 Declaration of Condominium.

[124] *See* 2nd Haberman Affidavit at ¶ 5, Doc. No. 125.

[125] *Evers v. General Motors Corp.* 770 F.2d 984, 986.

more than ample time to inspect the units.  Defendants, on the other hand, have provided ample evidence that verifies the units were all built exactly as represented in the Prospectus.[126]

None of plaintiffs' allegations in Count VI are supported by any facts that would establish a genuine issue of fact that Mona Lisa made any false or misleading statements in their promotional materials.  The Court will enter summary judgment in favor of defendants on Count VI.

## MONA LISA DID NOT VIOLATE THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (COUNT VII).

The Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") provides that a violation of any law, statute, rule or ordinance that proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices, is a per se violation of FDUTPA.   In Count VII, plaintiffs have alleged per se violations of FDUTPA based on the alleged violations of ILSFDA, the 1933 Securities Act, and Florida Statutes §§ 718.503, 718.506, 718.202, and 190.048.  In accordance with this Court's rulings above, and for other reasons discussed below, plaintiffs cannot establish a predicate act upon which to base a per se violation of FDUTPA.[127]

First, in accordance with the Court's rulings above, plaintiffs cannot establish a predicate act under ILSFDA, the 1933 Securities Act, Fla. Stats. §§ 718.503 or 718.50 because the Court has held that Mona Lisa has not violated any of these statutes.  Nonetheless, Plaintiffs argue that because the Court in part bases its holding under ILSFDA on plaintiffs' claims being time-barred, the Court should, for purposes of FDUTPA, look at Mona Lisa's underlying conduct *without regard to ILSFDA's statute of limitations* and find a violation of ILSFDA to serve as a predicate violation of FDUTPA.  In other words, plaintiffs argue that conduct that violates

---

[126] 2nd Haberman Affidavit, Doc. No. 125, at ¶ 5.

[127] Although the Court holds that defendants have not violated the 1933 Securities Act or the Florida Securities Act, the alleged violations under those acts could not serve as predicate acts under FDUTPA.  As this Court has previously held in this case, the alleged securities act violations do not involve allegations of unfair trade practices, but rather the sale of unregistered securities.  Memorandum Opinion Denying Defendants' Motion to Dismiss (Doc. No. 92).

ILSFDA's substantive provisions can constitute a per se violation of FDUTPA, *even when* that conduct occurred beyond the applicable statute of limitations.[128]

The argument to ignore the applicable statute of limitation is meritless. The basis for a court's holding under a predicate statute is of no significance for purposes of FDUTPA. A party either has or does not have a claim under a predicate statute. In this case, the buyers' ILSFDA claims are largely time-barred. They do not have a claim. The reason is irrelevant; the claim is extinguished for all purposes, including serving as a predicate act for FDUTPA. Plaintiffs cannot establish a per se violation of FDUTPA based on alleged but unfounded violations of ILSFDA.

Plaintiffs also have alleged predicate violations under Fla. Stat. §§ 718.202 and 190.048. Neither of these Florida statutes can serve as predicate violations for a claim under FDUTPA. First, a violation of Fla. Stat. § 718.202 does not constitute a violation of FDUTPA.[129] So even if the Court later finds a violation under this section, plaintiffs cannot establish a per se violation of FDUTPA with this statute. Second, Fla. Stat. § 190.048 is inapplicable in this case because it applies only to contracts for the sale of a residential unit within a Community Development District. Mona Lisa is not selling residential units within a CDD.[130] Accordingly, Mona Lisa has not violated § 190.048, and plaintiffs cannot establish a per se FDUTPA violation using this statute either.

Because the Court has found that Mona Lisa did not violate any statute that could serve as a predicate to establish a per se violation of FDUTPA, plaintiffs have no claim under FDUTPA. Defendants are entitled to summary judgment in their favor on Count VII.

---

[128] Plaintiffs cite *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 504 (2001) and a number of similar Florida cases for the proposition that the "expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right." But they cherry-picked this quotation from the middle of a longer sentence having to do with claim-preclusion. Neither the sentence fragment nor the complete sentence supports plaintiffs' argument.

[129] *Double AA Int'l Investment Group, Inc. v. Swire Pacific Holdings, Inc.*, 674 F.Supp.2d 1344, 1357 (S.D. Fla. 2009); *Edgewater By the Bay, LLLP v. Gaunchez (In re Edgewater By the Bay, LLLP)*, 419 B.R. 511 (Bankr. S.D. Fla. 2009).

[130] 2nd Haberman Affidavit at ¶ 23, Doc. No. 125.

**FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT
ON MONA LISA'S CONTRACTUAL REQUIREMENT
TO PERFORM WITHIN A REASONABLE TIME (COUNT VIII).**

In Count VIII, plaintiffs allege that Mona Lisa breached the purchase agreements in three ways.  First, they assert that the allegations regarding the size of the pool deck and the elimination of the rooftop deck, which formed the basis for their claims under Count V, also establish a breach of contract because Section 27(g) of the purchase agreements mirrors the statutory language of Fla. Stat. § 718.503.  Because the Court has ruled in favor of defendants on Count V, determining that the allegedly material adverse changes were not in fact adverse, the Court has also already determined that Mona Lisa did not breach Section 27(g) of the purchase agreements.  Accordingly, defendants are entitled to partial summary judgment as to this part of Count VIII.

Second, plaintiffs allege that Mona Lisa failed to provide them with documents showing the allegedly material adverse changes to the development, as required to be provided under Section 27(g) of the purchase agreements.  Again, because the Court has held that there were no material adverse changes made to the development, Mona Lisa was not required to provide plaintiffs with any amendments to the development plans.  Defendants are entitled to partial summary judgment as to this portion of Count VIII.

Third, plaintiffs' final breach of contract argument is that Mona Lisa failed to close by the Estimated Closing Date established by each purchase agreement.  Defendants argue in response that plaintiffs' breach of contract claim fails as a matter of law because the Estimated Closing Date was only an estimate, because Mona Lisa reserved the right in paragraph 8(a) of

the purchase agreements to delay closing for any reason, and because plaintiffs cannot show damages. The Court will address both parties' arguments in turn.[131]

Under Florida law, the elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages.[132] When a contract fails to specify a time for performance, the law will imply a reasonable time by which the contract should have been performed.[133] Performance, under Florida law, is not complete until a developer obtains a certificate of occupancy and the buyer is able to close and occupy the unit.[134] Unless specifically provided by contract, time is not of the essence in contracts for the sale and purchase of real estate.[135] When time is not of the essence for closing under a real estate contract, a party can breach by failing to timely close only by refusing to perform after the other party demands that a closing take place within a reasonable time and place.[136]

Plaintiffs contend that the Estimated Closing Dates specified in paragraph 8(a) of the purchase agreements[137] (either April 30 or September 30, 2007) are by law the reasonable dates by which Mona Lisa was required to obtain and deliver a certificate of occupancy for the units, citing *Harvey v. Lake Buena Vista Resort, LLC*.[138] But that case involved purchase agreements with a firm two-year completion deadline. Indeed, *Harvey* found a breach of contract when the developer obtained a certificate of occupancy a mere four days after the absolute deadline for

---

[131] Plaintiffs appear to have dropped their argument that Mona Lisa breached Paragraph 3 of the Updated Purchase Agreements by failing to complete construction of the units within two years after the dates the agreements were signed. In any event, this argument is not supported by the facts. Even assuming that Mona Lisa finished construction on May 7, 2008, the latest date by which Mona Lisa could have finished construction, no plaintiff signed the Updated Purchase Agreement before May 7, 2006. Therefore, because all of the plaintiffs who signed the Updated Purchase Agreement did so on or after June 22, 2006, no plaintiff can claim that Mona Lisa breached Paragraph 3 of the Updated Purchase Agreement.
[132] *Border Collie Rescue, Inc. v. Ryan*, 418 F.Supp.2d 1330, 1342-43 (M.D. Fla. 2006).
[133] *Denson v. Stack*, 997 F. 2d 1356, 1361 (11th Cir. 1993).
[134] *Hollander v. K-Site Assocs.*, 630 So.2d 1153, 1154 (Fla. 3d DCA 1993).
[135] *Henry v. Ecker*, 415 So.2d 137, 140 (Fla. 5th DCA 1982).
[136] *Id.*
[137] The Original Purchase Agreements specified April 30, 2007, as the Estimated Closing Date, while the Updated Purchase Agreements specified September 2007, as the Estimated Closing Date.
[138] 568 F.Supp.2d 1354, 1366 (M.D. Fla. 2008).

completion specified in the purchase agreements.[139]   Here, because there was not a firm commitment to close on the Estimated Closing Date, and moreover when paragraph 8(a) of the purchase agreements expressly allows Mona Lisa to delay closing until "such later date…as may be set by Seller," the Court cannot find that the Estimated Closing Date was, *as a matter of law*, the date by which Mona Lisa was required close.

On the other hand, the Court cannot at this point find, *as a matter of law,* that Mona Lisa was permitted under the contract to delay closing for up to a year after the Estimated Closing Date because the time for Mona Lisa's obligation to close may have been "of the essence" under paragraph 26 of the purchase agreements.   As noted above, if time was *not* of the essence, plaintiffs, under Florida contract law, would need to establish they demanded performance from Mona Lisa within a reasonable time and that Mona Lisa then failed to perform.[140]   Alternatively, if time *was* of the essence, plaintiffs would not be required to demand Mona Lisa's performance in order to bring a breach of contract claim.   The time of the essence provision in the purchase agreements, paragraph 26, reads in full:

> Time is of the essence for making all payments due under this Contract, *and for the closing of this transaction*.   Time for Purchaser's performance of all other obligations hereunder may be made of the essence by Seller giving not less than five (5) days' advance written notice to Purchaser."   (Emphasis added).

The plain meaning of the last clause of the first sentence indicates that time was of the essence for both parties' obligations to close.   However, this seems to contradict paragraph 8(a), which allows Mona Lisa to delay closing for any reason.   And to add to the confusion, paragraph 26 on whole seems only to concern the Purchaser's obligations, so it is not clear whether the parties intended to subject Mona Lisa (in addition to the buyers) to the obligations in paragraph 26.   The Court accordingly finds that the purchase agreements are ambiguous as to whether time was of the essence for Mona Lisa's obligation to close.

---

[139] *Id.*   Although the contracts also specified an estimated closing date, *Harvey* found a breach of contract because the developer failed to complete construction by the two-year deadline.

[140] *Henry v. Ecker*, 415 So.2d 137, 140 (Fla. 5th DCA 1982).

Finally, defendants also contend that plaintiffs cannot show damages as a result of Mona Lisa's delay in closing. But, as plaintiffs point out, paragraph 13 of the purchase agreements gives the purchasers the right to terminate the contract and receive a full refund of all deposits paid in the event Mona Lisa fails to perform its obligations under the contract, which likely include finishing the units and closing. Although paragraph 13 of the Original Purchase Agreements also limits the purchaser's remedies and requires them to waive any claim for specific performance or damages, clearly plaintiffs may still maintain their breach of contract claim and attempt to recover the remedies provided by contract. Because there is a factual issue remaining as to whether Mona Lisa's obligation to close was intended by the parties to be subject to the time of the essence provision in paragraph 26, the Court will deny both parties' motions for summary judgment on this part of Count VIII.

## PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT IS PREMATURE (COUNT X).

In Count X, Plaintiffs request a declaratory judgment holding the following:

(1) SunTrust Bank is liable for payment of plaintiffs' deposits;
(2) Westchester is liable for payment of up to 10 percent of the purchase price of each plaintiffs' contract;
(3) Plaintiffs' deposits paid are property of plaintiffs and not of Mona Lisa and the bankruptcy estate;
(4) At a minimum, the 10 percent of purchase price portion of plaintiffs' deposits are property of plaintiffs;
(5) The BankFirst Mortgage is inferior to plaintiffs' equitable lien for the full amount of the deposits paid by plaintiffs;
(6) BankFirst holds a mortgage lien, if any, that is inferior to plaintiffs' equitable lien for the full amount of deposits paid; and
(7) Plaintiffs are entitled to the immediate return of their full deposits plus any interest accrued, plus attorneys' fees, costs, and interest.

Although a large portion of plaintiffs' amended complaint is resolved in favor of defendants in this opinion, the Court will need further evidence on Count IV and a portion of Count VIII. Until all factual issues are resolved, it is premature to enter any declaratory judgment. The Court therefore will deny without prejudice the parties' motion for summary judgment on Count X.

In conclusion, the Court will grant summary judgment in favor of defendants as to Counts I, II, III, V, VI, VII, and portions of Count VIII.  The Court will dismiss Count IX, due to plaintiffs' voluntary dismissal of BankFirst.  The Court will set a further evidentiary hearing to resolve Count IV, a portion of Count VIII, and, to the extent necessary, Count X.  A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on August 5, 2010.

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Plaintiffs' Counsel:  John L. Urban, Urban Their Federer & Jackson, P.A., 200 S. Orange Avenue, Suite 2025, Orlando, FL  32801

Defendant's Counsel (Mona Lisa at Celebration, LLC):  **R Scott Shuker**, Latham Shuker Eden & Beaudine LLP, Post Office Box 3353, Orlando, FL 32802

Defendant's Counsel (Westchester Fire Insurance Company): **Vanessa D Sloat-Rogers,** Sedgwick Detert Moran & Arnold LLP, 2400 E Commercial Blvd, Ste 1100, Ft Lauderdale, FL 33308

Defendant's Counsel (SunTrust Bank):  **John R Stump,** Stump Callahan Dietrich & Spears PA, 37 North Orange Avenue, Suite 200, Orlando, FL 32801

Defendant's Counsel (BankFirst):  **L William Porter, III,** Lowndes Drosdick Doster Kantor & Reed PA, Post Office Box 2809, Orlando, FL 32802

APPENDIX A
All plaintiffs

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Ajogbasile, Mosunmola | 124 | 9/25/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #59 - 5/21/2009 | #246 – 7/29/2009 |
| Askeland, Morten | 320 | 2/27/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #71 - 5/21/2009 | #216 – 7/29/2009 |
| Augland, Olvind | 304 | 2/27/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #68 - 5/21/2009 | #215 – 7/29/2009 |
| Bloe, Chancelle | 103 | 9/29/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #69 - 5/21/2009 | #195 – 7/29/2009 |
| Booth, Jason | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 - 5/21/2009 | #238 – 7/29/2009 |
| Brearley, James | 116 | 6/7/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #65 - 5/21/2009 | #214 – 7/29/2009 |
| Brearley, Joanne | 116 | 6/7/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #65 – 5/21/2009 | #214 – 7/29/2009 |
| Bruno, Laura | 535 | 9/26/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #57 – 5/21/2009 | #250 – 7/29/2009 |
| Byrne, Anne Marie | 319/303 | 4/29/2007 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #58 – 5/21/2009 | #222 – 7/29/2009 |
| Byrne, Maurice | 319/303 | 4/29/2007 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #58 – 5/21/2009 | #222 – 7/29/2009 |
| Crovetto, Giovanni | 221 | 1/17/2006 | 1/14/2009 | 6:09-cv-95 (M.D. Fla.) | #56 - 5/21/2009 | #243 - 7/29/2009 |
| Carlson, Noreen | 347 | 9/26/2005 | 5/6/2008 | 6:08-cv-737 (M.D. Fla.) | #48 – 5/21/2009 | #210 - 7/29/2009 |
| Deiulio, William | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 – 5/21/2009 | #238 - 7/29/2009 |

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case  No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Flaugher, Sean | 140 | 10/3/2005 | 8/18/2008 | 6:08-cv-1415 (M.D. Fla.) | #55 – 5/21/2009 | #242 - 7/29/2009 |
| Halbeck, Eric | 418 | 9/29/2005 | 5/6/2008 | 6:08-cv-738 (M.D. Fla.) | #50 – 5/21/2009 | #182 - 7/29/2009 |
| Han, Hong Ju | 512 | 10/3/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #72 – 5/21/2009 | #194 - 7/29/2009 |
| Holden, Jacqueline | 515 | 10/11/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #62 – 5/21/2009 | #247 - 7/29/2009 |
| Holden, Paul | 515 | 10/11/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #62 – 5/21/2009 | #247 - 7/29/2009 |
| Honcharik, Michael | 418 | 9/29/2005 | 5/6/2008 | 6:08-cv-738 (M.D. Fla.) | #50 – 5/21/2009 | #182 - 7/29/2009 |
| Lenihan, Patrick | 140 | 10/3/2005 | 8/18/2008 | 6:08-cv-1415 (M.D. Fla.) | #55 – 5/21/2009 | #242 - 7/29/2009 |
| Lynch, Charles | 439 | 9/22/2005 | 5/6/2008 | 6:08-cv-736 (M.D. Fla.) | #52 – 5/21/2009 | #207 - 7/29/2009 |
| Marklew, Clive | 219 | 11/10/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #64 – 5/21/2009 | #211 - 7/29/2009 |
| Marklew, Jessica | 219 | 11/10/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #64 – 5/21/2009 | #211 - 7/29/2009 |
| Mondello, Anthony | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 – 5/21/2009 | #238 - 7/29/2009 |
| Ormson, Robert | 218 | 2/27/2006 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #63 – 5/21/2009 | #180 - 7/29/2009 |
| Ormson, Susan | 218 | 2/27/2006 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #63 – 5/21/2009 | #180 - 7/29/2009 |
| O'Sullivan, Dennis | 517 | 9/28/2005 | 5/6/2008 | 6:08-cv-735 (M.D. Fla.) | #49 – 5/21/2009 | #183 - 7/29/2009 |

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case  No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| O'Sullivan, Kathryn | 517 | 9/28/2005 | 5/6/2008 | 6:08-cv-735 (M.D. Fla.) | #49 – 5/21/2009 | #183 - 7/29/2009 |
| Owen, Gregory | 306 | 9/30/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #60 – 5/21/2009 | #248 - 7/29/2009 |
| Reardon, Krystyn | 226 | 9/29/2005 | 5/6/2008 | 6:08-cv-739 (M.D. Fla.) | #51 – 5/21/2009 | #181 - 7/29/2009 |
| Richards, Jene Martins | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Richards, Nathaniel Dean | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Savino, Anthony | 511/ 536 | 10/28/2005 | 6/6/2008 | 6:08-cv-902 (M.D. Fla.) | #53 – 5/21/2009 | #239 - 7/29/2009 |
| Scott, Brenda | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Scott, Gilbert | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Staples, Gracie Hill | 124 | 9/25/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #59 – 5/21/2009 | #246 - 7/29/2009 |
| Vinueza, Vincent | 221 | 1/17/2006 | 1/14/2009 | 6:09-cv-95 (M.D. Fla.) | #56 – 5/21/2009 | #243 - 7/29/2009 |

| Dodsworth Adversary Proceeding (6:09-ap-000769) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Adv. Proc. Filed | Adversary Proceeding No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Adamson, Peter | 402/ 505 | 3/30/2007 | 5/26/2009 | 6:09-ap-000769 | #76 - 5/21/2009 | #218 – 7/29/2009 |
| Adamson, Roseleen | 402/ 505 | 3/30/2007 | 5/26/2009 | 6:09-ap-000769 | #76 - 5/21/2009 | #218 – 7/29/2009 |
| Denvir, David | 529 | 2/16/2007 | 5/26/2009 | 6:09-ap-000769 | #131 - 7/9/2009 | #186 – 7/29/2009 |
| Dodsworth, Karen | 108 | 6/22/2006 | 5/26/2009 | 6:09-ap-000769 | #74 - 5/21/2009 | #217 – 7/29/2009 |
| Dodsworth, Martin | 108 | 6/22/2006 | 5/26/2009 | 6:09-ap-000769 | #74 - 5/21/2009 | #217 – 7/29/2009 |
| Gonzalez, Alvaro | 523 | 1/12/2006 | 5/26/2009 | 6:09-ap-000769 | #78 - 5/21/2009 | #193 – 7/29/2009 |
| Gonzalez, Dario | 253 | 1/12/2006 | 5/26/2009 | 6:09-ap-000769 | #78 - 5/21/2009 | #193 – 7/29/2009 |
| Holdstock, Andrew Jack | 126 | 9/29/2005 | 5/26/2009 | 6:09-ap-000769 | #129 - 7/06/2009 | #185 – 7/29/2009 |
| Perry, Melissa | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |
| Perry, Martin | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |
| Pezzillo, Brian | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |

APPENDIX B
Plaintiffs who are not time-barred from bringing rescission claims

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case  No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Brearley, James | 116 | 6/7/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #65 - 5/21/2009 | #214 – 7/29/2009 |
| Brearley, Joanne | 116 | 6/7/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #65 – 5/21/2009 | #214 – 7/29/2009 |
| Byrne, Anne Marie | 319/ 303 | 4/29/2007 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #58 – 5/21/2009 | #222 – 7/29/2009 |
| Byrne, Maurice | 319/ 303 | 4/29/2007 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #58 – 5/21/2009 | #222 – 7/29/2009 |

APPENDIX C
Plaintiffs who are not time-barred from bringing damages claims

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case  No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Askeland, Morten | 320 | 2/27/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #71 - 5/21/2009 | #216 – 7/29/2009 |
| Augland, Olvind | 304 | 2/27/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #68 - 5/21/2009 | #215 – 7/29/2009 |
| Booth, Jason | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 - 5/21/2009 | #238 – 7/29/2009 |
| Brearley, James | 116 | 6/7/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #65 - 5/21/2009 | #214 – 7/29/2009 |
| Brearley, Joanne | 116 | 6/7/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #65 – 5/21/2009 | #214 – 7/29/2009 |
| Byrne, Anne Marie | 319/ 303 | 4/29/2007 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #58 – 5/21/2009 | #222 – 7/29/2009 |
| Byrne, Maurice | 319/ 303 | 4/29/2007 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #58 – 5/21/2009 | #222 – 7/29/2009 |
| Crovetto, Giovanni | 221 | 1/17/2006 | 1/14/2009 | 6:09-cv-95 (M.D. Fla.) | #56 - 5/21/2009 | #243 - 7/29/2009 |
| Carlson, Noreen | 347 | 9/26/2005 | 5/6/2008 | 6:08-cv-737 (M.D. Fla.) | #48 – 5/21/2009 | #210 - 7/29/2009 |
| Deiulio, William | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 – 5/21/2009 | #238 - 7/29/2009 |
| Flaugher, Sean | 140 | 10/3/2005 | 8/18/2008 | 6:08-cv-1415 (M.D. Fla.) | #55 – 5/21/2009 | #242 - 7/29/2009 |
| Halbeck, Eric | 418 | 9/29/2005 | 5/6/2008 | 6:08-cv-738 (M.D. Fla.) | #50 – 5/21/2009 | #182 - 7/29/2009 |
| Honcharik, Michael | 418 | 9/29/2005 | 5/6/2008 | 6:08-cv-738 (M.D. Fla.) | #50 – 5/21/2009 | #182 - 7/29/2009 |

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case  No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Lenihan, Patrick | 140 | 10/3/2005 | 8/18/2008 | 6:08-cv-1415 (M.D. Fla.) | #55 – 5/21/2009 | #242 - 7/29/2009 |
| Lynch, Charles | 439 | 9/22/2005 | 5/6/2008 | 6:08-cv-736 (M.D. Fla.) | #52 – 5/21/2009 | #207 - 7/29/2009 |
| Mondello, Anthony | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 – 5/21/2009 | #238 - 7/29/2009 |
| Ormson, Robert | 218 | 2/27/2006 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #63 – 5/21/2009 | #180 - 7/29/2009 |
| Ormson, Susan | 218 | 2/27/2006 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #63 – 5/21/2009 | #180 - 7/29/2009 |
| O'Sullivan, Dennis | 517 | 9/28/2005 | 5/6/2008 | 6:08-cv-735 (M.D. Fla.) | #49 – 5/21/2009 | #183 - 7/29/2009 |
| O'Sullivan, Kathryn | 517 | 9/28/2005 | 5/6/2008 | 6:08-cv-735 (M.D. Fla.) | #49 – 5/21/2009 | #183 - 7/29/2009 |
| Reardon, Krystyn | 226 | 9/29/2005 | 5/6/2008 | 6:08-cv-739 (M.D. Fla.) | #51 – 5/21/2009 | #181 - 7/29/2009 |
| Savino, Anthony | 511/536 | 10/28/2005 | 6/6/2008 | 6:08-cv-902 (M.D. Fla.) | #53 – 5/21/2009 | #239 - 7/29/2009 |
| Vinueza, Vincent | 221 | 1/17/2006 | 1/14/2009 | 6:09-cv-95 (M.D. Fla.) | #56 – 5/21/2009 | #243 - 7/29/2009 |

| Dodsworth Adversary Proceeding (6:09-ap-000769) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Adv. Proc. Filed | Adversary Proceeding No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Adamson, Peter | 402/ 505 | 3/30/2007 | 5/26/2009 | 6:09-ap-000769 | #76 - 5/21/2009 | #218 – 7/29/2009 |
| Adamson, Roseleen | 402/ 505 | 3/30/2007 | 5/26/2009 | 6:09-ap-000769 | #76 - 5/21/2009 | #218 – 7/29/2009 |
| Denvir, David | 529 | 2/16/2007 | 5/26/2009 | 6:09-ap-000769 | #131 - 7/9/2009 | #186 – 7/29/2009 |
| Dodsworth, Karen | 108 | 6/22/2006 | 5/26/2009 | 6:09-ap-000769 | #74 - 5/21/2009 | #217 – 7/29/2009 |
| Dodsworth, Martin | 108 | 6/22/2006 | 5/26/2009 | 6:09-ap-000769 | #74 - 5/21/2009 | #217 – 7/29/2009 |

APPENDIX D
Plaintiffs whose claims are completely time-barred under the ILSFDA

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Ajogbasile, Mosunmola | 124 | 9/25/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #59 - 5/21/2009 | #246 – 7/29/2009 |
| Bloe, Chancelle | 103 | 9/29/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #69 - 5/21/2009 | #195 – 7/29/2009 |
| Bruno, Laura | 535 | 9/26/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #57 – 5/21/2009 | #250 – 7/29/2009 |
| Han, Hong Ju | 512 | 10/3/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #72 – 5/21/2009 | #194 - 7/29/2009 |
| Holden, Jacqueline | 515 | 10/11/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #62 – 5/21/2009 | #247 - 7/29/2009 |
| Holden, Paul | 515 | 10/11/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #62 – 5/21/2009 | #247 - 7/29/2009 |
| Marklew, Clive | 219 | 11/10/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #64 – 5/21/2009 | #211 - 7/29/2009 |
| Marklew, Jessica | 219 | 11/10/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #64 – 5/21/2009 | #211 - 7/29/2009 |
| Owen, Gregory | 306 | 9/30/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #60 – 5/21/2009 | #248 - 7/29/2009 |
| Richards, Jene Martins | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Richards, Nathaniel Dean | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Scott, Brenda | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Scott, Gilbert | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Staples, Gracie Hill | 124 | 9/25/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #59 – 5/21/2009 | #246 - 7/29/2009 |

| Dodsworth Adversary Proceeding (6:09-ap-000769) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Adv. Proc. Filed | Adversary Proceeding No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Gonzalez, Alvaro | 523 | 1/12/2006 | 5/26/2009 | 6:09-ap-000769 | #78 - 5/21/2009 | #193 – 7/29/2009 |
| Gonzalez, Dario | 253 | 1/12/2006 | 5/26/2009 | 6:09-ap-000769 | #78 - 5/21/2009 | #193 – 7/29/2009 |
| Holdstock, Andrew Jack | 126 | 9/29/2005 | 5/26/2009 | 6:09-ap-000769 | #129 - 7/06/2009 | #185 – 7/29/2009 |
| Perry, Melissa | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |
| Perry, Martin | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |
| Pezzillo, Brian | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |